IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

TRISTAN DI MONTENEGRO,　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　)　　　　1:16CV1400 (JCC/JFA)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
FEDERAL BUREAU OF　　　　　　　)
INVESTIGATION,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　)

## **M E M O R A N D U M　　O P I N I O N**

This case is before the Court on Defendant Federal
Bureau of Investigation's ("Defendant" or "FBI") Motion for
Summary Judgment. [Dkt. 21.] For the following reasons, the
Court will grant Defendant's motion.

### **I. Background**[1]

On July 1, 2015, Plaintiff Tristan di Montenegro
("Plaintiff") submitted a Freedom of Information Act and Privacy
Act ("FOIA/PA") request to the FBI, in which Plaintiff requested
"my records" for the period of "1980 to present." Mem. in Supp.
of Def.'s Mot. for Summ. J. [Dkt. 22], Exh. 1, Declaration of
David M. Hardy ("Hardy Decl."), Exh. A at 1. Plaintiff

---

[1] Plaintiff failed to file a brief in opposition to Defendant's motion.
Accordingly, the facts set forth in Defendant's brief and the attached
exhibits are deemed admitted for purposes of this matter. *See, e.g., Bon
Supermarket & Deli v. United States,* 87 F. Supp. 2d 593, 600 (E.D. Va. 2000).

indicated that he wanted the FBI to search for "any and all files, documents, records and investigations classified under designation 190 and/or 197 main files, as well as all control files including but not limited to those with '-0,' '-2,' and '-5' designations." *Id.* (emphases omitted).

On July 15, 2015, the FBI wrote to Plaintiff and stated that it was "unable to identify main file records responsive" to the request. Hardy Decl., Exh. B at 1. The FBI informed Plaintiff that if he had "additional information pertaining to the subject that [he] believe[d] was of investigative interest to the [FBI]," he could provide those details and the FBI would "conduct an additional search." *Id.* The response also included a standard statement that the FBI "neither confirms nor denies the existence of [Plaintiff's] name on any watch lists." *Id.* Finally, the response indicated that Plaintiff could appeal to the Office of Information Policy ("OIP") within 60 days. *Id.*

On July 31, 2015, Plaintiff appealed to the OIP, arguing that the FBI should have searched for "classified" records and "control files." Hardy Decl., Exh. C at 4-8. Plaintiff also offered an "amendment" to his original request, asking the FBI to search a list of seven additional "Systems of Records," including the "National Crime Information Center," "Electronic Surveillance (ELSUR) Indices," "Terrorist Screening

2

Records System," and "Law Enforcement National Data Exchange." *Id.* at 5.

On August 24, 2015, the OIP denied Plaintiff's appeal, concluding that the FBI had conducted an "adequate, reasonable search" and that "no main file records" had been located. Hardy Decl., Exh. E at 1-2. The appeal denial stated that Plaintiff could submit additional information to the FBI regarding specific dates, locations, and names that the FBI could use to try and "identify responsive cross references." *Id.* at 2. Finally, the appeal denial stated that Plaintiff could file suit in federal district court. *Id.*

On November 4, 2016, Plaintiff filed the instant action, proceeding *pro se*. Compl. [Dkt. 1]. Plaintiff detailed the procedural history of his FOIA/PA request and asked the Court to "[o]rder defendant immediately to state which records it intends to disclose," "order defendant to provide access to the requested documents," "expedite this proceeding," and "award plaintiff costs and reasonable attorneys [sic] fees." [Dkt. 1-1] at 2. In support of this request, Plaintiff alleged that the "FBI and DHS have engaged in a conspiracy" where Plaintiff "has been subject to cyber-harassment, death threats, anti-Semitic e-mails, interference of communications with Jewish organizations, allegations that he is a 'closet Muslim,' identity theft and on-line impersonation, harassment of business and employment

3

contacts with the goal of depriving the plaintiff of an income, interception of plaintiff-attorney communications with the goal of depriving the plaintiff of legal counsel, [and] abusive and threatening text messages and phone calls."[2]  [Dkt. 1-2] at 1.

On December 19, 2016, the FBI filed its answer and status report, [Dkts. 10, 11], and stated that "[a]s part of this litigation, the FBI has been conducting additional searches to ensure that it identifies all potentially responsive documents to the plaintiff's request," and that the FBI had "identified some potentially responsive records," [Dkt. 11] at 1; Hardy Decl., ¶ 21.  The FBI proposed that the Court order the FBI to complete its search and production of records by February 28, 2017, followed by the parties filing a joint status report on or before March 31, 2017.  [Dkt. 11] at 1-2.

By February 28, 2017, the FBI had completed its additional search for records responsive to Plaintiff's request. Hardy Decl., Exh. F.  A portion of the documents discovered during these additional searches originated with other government agencies: the Department of Justice's Office of Inspector General ("OIG"), the United States Immigration and Customs Enforcement ("ICE"), and the United States Department of State ("State").  Hardy Decl., ¶ 60.  The FBI referred these

---

[2] These claims were the subject of a separate action before Judge Trenga, who recently dismissed the case.  *See Montenegro v. NSA*, No. 1:16-cv-1608, ECF No. 31 (E.D. Va. May 11, 2017).

records to the relevant agencies for their review and potential redaction. *Id.*; Exh. F at 1. OIG reviewed 22 pages of records. Mem. in Supp. of Def.'s Mot. for Summ. J., Exh. 2, Declaration of Deborah M. Waller ("Waller Decl."), ¶¶ 5-12. ICE reviewed 8 pages of records. *Id.*, Exh. 3, Declaration of Fernando Pineiro ("Pineiro Decl."), ¶¶ 6-9. State also reviewed 8 pages of records. *Id.*, Exh. 4, Declaration of Eric F. Stein ("Stein Decl."), ¶¶ 3-16.

Attached to its motion for summary judgment, the FBI submitted four *Vaughn* declarations to specify and explain the redactions and withholdings made by each of the four agencies pursuant to FOIA/PA exemptions. The FBI withheld various information under FOIA Exemptions 6 and 7(C), 7(D), 7(E), and 7(F), as well as under PA Exemption (j)(2). Hardy Decl., ¶¶ 29-43, 44-49, 50-56, 57-58, 23. The OIG withheld the name of an administrative employee under FOIA Exemptions 6 and 7(C). Waller Decl., ¶¶ 6-12. ICE redacted the name of one special agent pursuant to FOIA Exemptions 6 and 7(C), Pineiro Decl., ¶ 8, and withheld information contained within the Alien File, Index, and National File Tracking System pursuant to PA Exemption (k)(2), *id.*, ¶ 9. Finally, State withheld the names of a State consular official and of a Bureau of Diplomatic Security agent pursuant to FOIA Exemptions 6 and 7(C). Stein Decl., ¶¶ 14-16.

After the conclusion of all four agencies' review, the FBI produced 48 pages of documents to Plaintiff.[3]  Hardy Decl., Exh. F.  The documents relate primarily to three topics: (1) Plaintiff's 2014 tips to the FBI regarding a theft of diamonds in Belgium; (2) Plaintiff's 2014 claim that he was the victim of wire fraud; and (3) Plaintiff's 2015 complaints concerning the FBI's alleged "conspiracy" against him.  Mem. in Supp. of Def.'s Mot. for Summ. J., ¶ 9.

On April 4, 2017, Plaintiff filed a status report indicating his belief that the FBI's February 28 production "did not respond to any of the plaintiff's specific requests as referenced within the original FOIA Requests."  [Dkt. 16] at 1.  On April 5, 2017, the FBI filed its own status report indicating that it had turned over all responsive documents.  [Dkt. 19] at 2.  However, given that Plaintiff seemed to challenge the adequacy of its search, the FBI also proposed a briefing schedule for summary judgment.  *Id*.  The Court adopted the FBI's proposed schedule on April 6, 2017.  [Dkt. 20.]

The FBI has now moved for summary judgment.  [Dkt. 21.]  The FBI contends that its search was adequate, the redactions made on the produced records fall within well-established FOIA/PA exemptions, and each of the redactions is

---

[3] Fourteen pages were withheld in their entirety because, after redactions, the remaining words had "minimal or no informational content."  Hardy Decl., ¶ 59(c).

detailed with reasonable specificity in the *Vaughn* declarations.
Mem. in Supp. of Def.'s Mot. for Summ. J. at 1.  Plaintiff
failed to file a brief in opposition to the FBI's motion.[4]  Oral
argument was held on June 22, 2017.  This matter is now ripe for
disposition.

## II. Standard of Review

Summary judgment is appropriate only if the record
shows "that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477
U.S. 317, 322–23 (1986).  The moving party always bears the
initial burden of "informing the district court of the basis for
its motion," and identifying the matter "it believes
demonstrate[s] the absence of a genuine issue of material fact."
*Celotex,* 477 U.S. at 323.  "A material fact is one 'that might
affect the outcome of the suit under the governing law.'  A
disputed fact presents a genuine issue 'if the evidence is such
that a reasonable jury could return a verdict for the non-moving
party.'"  *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183 (4th
Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S.
242, 248 (1986)).

---

[4] At oral argument, Plaintiff apologized for his lack of understanding with
respect to the rules of civil procedure and verbally opposed Defendant's
motion.

Once the movant has met the initial burden, "the non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson,* 477 U.S. at 256). This is particularly important where the opposing party bears the burden of proof. *Hughes,* 48 F.3d at 1381. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249-50. Moreover, the mere existence of a scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Id.* at 252. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the opposing party is entitled to a verdict.

To obtain summary judgment in a FOIA/PA action, an agency must show that, viewing the facts in the light most favorable to the requester, there is no genuine issue of material fact with regard to the agency's compliance with FOIA. *See Wickwire Gavin, P.C. v. U.S. Postal Serv.,* 356 F.3d 588, 591 (4th Cir. 2004); *Steinberg v. U.S. Dep't of Justice,* 23 F.3d 548, 551 (D.C. Cir. 1994). FOIA cases are properly resolved on summary judgment after the agency has responded to the request. *See Hanson v. USAID,* 372 F.3d 286, 290 (4th Cir.

2004); *Wickwire,* 356 F.3d at 590.  The Court may award summary judgment based solely upon the information provided in affidavits or declarations when the affidavits or declarations describe the search conducted, explain the basis for its response, and are not controverted by contrary evidence in the record or evidence that the agency acted in bad faith.  *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981). Moreover, agency declarations are to be accorded a presumption of good faith.  *See, e.g., Bowers v. U.S. Dep't of Justice,* 930 F.2d 350, 357 (4th Cir. 1991).

### III. Analysis

A.   Adequacy of the FBI's Search

        Under FOIA, "the agency must make a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Nation Magazine v. Customs Serv.,* 71 F.3d 885 (D.C. Cir. 1995) (internal citation and quotations omitted).  The question is not whether every responsive document has been unearthed, but whether the agency has demonstrated that it has conducted a search reasonably calculated to uncover all relevant documents.  *Ethyl Corp. v. EPA,* 25 F.3d 1241, 1246-77 (4th Cir. 1994).  An adequate search "may be limited to the places most likely to contain responsive documents."  *Carter, Fullerton & Hayes, LLC v. FTC*, 601 F. Supp. 2d 728, 735 (E.D. Va. 2009)

(internal quotations omitted).  For the reasons stated below, the FBI conducted a reasonable and adequate search in light of Plaintiff's request for information.

Plaintiff's FOIA/PA request states that it seeks Plaintiff's "personal records, files and documentation" as a "global records and files request" covering "1980 to present." Hardy Decl., Exh. A at 1.  Typically, the FBI responds to requests like Plaintiff's by searching its Central Records System ("CRS"), which consists of applicant, investigative, intelligence, personnel, administrative, and general files complied and maintained by the FBI in the course of fulfilling its functions as a law enforcement, counterterrorism, and intelligence agency.[5]  Hardy Decl., ¶ 12.

To locate CRS information, the FBI relies upon index searches.  Hardy Decl., ¶ 19.  The FBI customarily uses the Universal Index ("UNI") application of Automated Case Support ("ACS") to conducts its searches due to the broad range of indexed material it can locate in FBI files.[6]  *Id.*  In addition, if a records request seeks information that may have been generated on or after July 1, 2012, the FBI also conducts a

---

[5] The CRS contains the records of the entire FBI organization, including FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices worldwide. Hardy Decl., ¶ 12.
[6] UNI is an automated index of the CRS; individual names may be recorded with applicable identifying information—such as date of birth, race, sex, locality, Social Security number, address, and/or date of an event—by all offices of the FBI for later retrieval.  *Id.*, ¶ 17.

second search of Sentinel, the FBI's next-generation case management system. *Id.*, ¶ 18.

On July 15, 2015, in response to Plaintiff's FOIA/PA request, the FBI used the UNI application of ACS to conduct a CRS index search for responsive "main" records.[7] Hardy Decl., ¶ 20. The FBI included search terms containing Plaintiff's name and aliases—"Tristan Di Montenegro," "Tristan Xango Di Montenegro," and "Peter Andrew Solomon"—in an attempt to find "personal records" responsive to Plaintiff's request. *Id.*, ¶ 20. The FBI's search also included alternate orderings and phonetic spellings of Plaintiff's name and aliases. *Id.*, ¶ 20 at n.5. The search failed to locate any records responsive to Plaintiff's FOIA/PA request. *Id.*, ¶ 20.

On December 7, 2016, the FBI conducted an additional search of the CRS via the UNI application of ACS, as well as ran a new index search via Sentinel. Hardy Decl., ¶ 21. The FBI used the same search terms as it had previously used, with the exception of also looking for cross-reference records.[8] *Id.* These cross-reference searches yielded 62 pages of responsive records to Plaintiff's FOIA/PA request. Mem. in Supp. of Def.'s Mot. for Summ. J. at 10.

---

[7] Main records refer to "records indexed to the main subject(s) of a file," which "carries the name of an individual, organization, or other subject matter that is the designated subject of the file." *Id.*, ¶ 14(a).

[8] Cross-reference records are records "that merely mention or reference an individual, organization, or other subject matter that is contained in a 'main' file record about a different subject matter." *Id.*, ¶ 14(b).

The FBI went into great detail to outline its methods for searching the CRS for records that are responsive to Plaintiff's request. "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese,* 790 F.2d 942, 956 (D.C. Cir. 1986). Having dedicated considerable time and effort to its searches, the FBI has satisfied its burden of demonstrating that its search was reasonably calculated to turn up all responsive records with respect to Plaintiff's request.

B.   FOIA and PA Exemptions

Out of the 62 pages discovered via the FBI's index searches, 48 pages were produced to Plaintiff. Mem. in Supp. of Def.'s Mot. for Summ. J. at 10. The FBI reviewed the majority of these records for potential withholdings pursuant to FOIA/PA exemptions, but portions were also referred to the OIG, ICE, and State for their review. *Id.* Having reviewed the four agencies' *Vaughn* declarations, the Court finds that the FBI has met its burden of demonstrating that all of the information withheld or redacted fell within one of the enumerated FOIA or PA exemptions.

1.   *FOIA Exemptions 6 and 7(C)*

Most of the withholdings that resulted from the four agencies' review fall under the privacy protections of FOIA

Exemptions 6 and 7(C).  Exemption 6 requires agencies to
withhold information contained in "personnel," "medical," and
"similar" files when disclosure would "constitute a clearly
unwarranted invasion of personal privacy."  5 U.S.C.
§ 552(b)(6).  The phrase "similar files" has a "broad, rather
than a narrow, meaning."  *United States Dep't of State v.
Washington Post Co.*, 456 U.S. 595, 598 (1982).  It "extends to
all information which applies to a particular individual,"
*Judicial Watch, Inc. v. United States*, 84 F. App'x 335, 338 (4th
Cir. 2004) (quotation marks and alternation omitted), including
"not just files, but also bits of personal information, such as
names and addresses," *Judicial Watch, Inc. v. FDA*, 449 F.3d 141,
152 (D.C. Cir. 2006).  Moreover, the requester bears the burden
of establishing a significant public interest in the disclosure
of such information.  *Nat'l Archives & Records Admin. v. Favish*,
541 U.S. 157, 172 (2004).

Exemption 7(C) operates similarly to Exemption 6.
*Solers, Inc. v. IRS*, 827 F.3d 323, 332 (4th Cir. 2016).  It
requires agencies to withhold information compiled for law
enforcement purposes that "could reasonably be expected to
constitute an unwarranted invasion of personal privacy."  5
U.S.C. § 552(b)(7)(C).

Here, the FBI has excluded eight categories of
individuals whose personal information is protected from

disclosure under Exemptions 6 and 7(C): (1) non-FBI federal employees; (2) FBI special agents and support personnel; (3) third parties mentioned in criminal files; (4) third parties of investigative interest; (5) third parties with criminal records; (6) third parties who provided information to the FBI; (7) third party victims; and (8) local law enforcement personnel. *See* Hardy Decl., ¶¶ 28, 34-43. Pursuant to these exemptions, the FBI withheld information contained in the records labeled as DIMONTENEGRO 19, 22-25, 32-35, 37-50, and 52-62. *Id.*, ¶¶ 34-43 and accompanying nn.8-15. It argues that these withholdings were necessary to protect the individuals from harassment, embarrassment, and/or invasion of privacy. *Id.*, ¶¶ 34-43. The Court agrees, finding that the withheld information is consistent with FOIA Exemptions 6 and 7(C). *See Judicial Watch*, 84 F. App'x at 339 (holding that the release of government employee names would constitute an unwarranted invasion of privacy).

In addition, the OIG withheld the name of one administrative employee pursuant to Exemptions 6 and 7(C). Waller Decl., ¶¶ 6-12. The OIG argues that "the documents concerned an allegation of work-related misconduct," qualifying as a "personnel" file under Exemption 6. *Id.*, ¶ 10. The OIG also argues that, because the documents were compiled to investigate potential misconduct by a Department of Justice

employee, the records were created for law enforcement purposes under Exemption 7(C). *Id.*, ¶ 11. Accordingly, the Court concludes that this information was properly withheld under FOIA Exemptions 6 and 7(C).

ICE also redacted one page of records to withhold the name and personally identifying information of a special agent. Pineiro Decl., ¶ 8. This redaction was made to prevent harassment, avoid placing the officer in danger, and preclude the possible minimization of his or her future effectiveness in investigations. *Id.* The Court finds that ICE's redaction was appropriate pursuant to FOIA Exemptions 6 and 7(C). *See Judicial Watch*, 84 F. App'x at 339.

Finally, State redacted the names of a State consular official and of a Bureau of Diplomatic Security agent. Stein Decl., ¶¶ 14-15. State contends that these redactions were necessary to protect the identities of individuals involved in law enforcement, avoiding possible harassment or intimidation as well as the possibility of compromising future law enforcement activities. *Id.*, ¶ 15. Again, State's redactions under FOIA Exemptions 6 and 7(C) were proper. *See Judicial Watch*, 84 F. App'x at 339.

2. *FOIA Exemptions 7(D), 7(E), and 7(F)*

A smaller portion of the withholdings in the records currently before the Court fall under FOIA Exemptions 7(D),

7(E), and 7(F).  The Court will briefly address each of these exemptions in turn.

FOIA Exemption 7(D) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source."  5 U.S.C. § 552(b)(7)(D).  If the FBI "can demonstrate that the information was provided in confidence at the time it was communicated to the FBI, the source will be deemed a confidential one, and both the identity of the source and the information he or she provided will be immune from FOIA disclosure."  *Dow Jones & Co. v. DOJ*, 917 F.2d 571, 575-76 (D.C. Cir. 1990) (internal quotation marks and citations omitted).  In addition, "when circumstances such as the nature of the crime investigated and the witness' relation to it support an inference of confidentiality, the Government is entitled to a presumption" of confidentiality.  *DOJ v. Landano*, 508 U.S. 165, 181 (1993).

In the instant case, the FBI has subdivided its Exemption 7(D) withholdings into two categories: (1) information

provided by foreign government authorities under an express assurance of confidentiality; and (2) information provided by sources under an implied assurance of confidentiality. Mem. in Supp. of Def.'s Mot. for Summ. J. at 15. Under the first category, the FBI protected the identity of, and information provided by, a foreign agency or authority, Hardy Decl., ¶ 47, by withholding information on records labeled DIMONTENEGRO 35-39, 41-42, 44-50, and 57, *id.* at n.17. Pursuant to the second category, the FBI protected the identities of, and information provided by, sources who provided "valuable, detailed information concerning the activities of subjects who were of investigative interest to the FBI or other law enforcement agencies." *Id.*, ¶ 49. The FBI withheld such information on records labeled DIMONTENEGRO 52-62. *Id.* at n.18. Because the FBI has demonstrated that these records were created for law enforcement purposes and that the information provided therein was provided as the result of either express or implied confidentiality, the Court finds that this information was properly withheld pursuant to FOIA Exemption 7(D).

FOIA Exemption 7(E) states that an agency may withhold records or information compiled for law enforcement purposes that would "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if

17

such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). This exemption "only requires that the [agency] demonstrate logically how the release of the requested information *might* create a risk of circumvention." *Gluckman v. U.S. Dep't of Labor*, No. 3:13-CV-169, 2013 WL 6184957, at *5 (E.D. Va. Nov. 26, 2013) (internal quotation marks omitted) (emphasis added).

Again, the FBI has subdivided its Exemption 7(E) withholdings into several categories: (1) database identifiers/printouts; (2) sensitive investigative techniques and procedures for investigating financial crimes; (3) sensitive FBI squads and units; and (4) sensitive file number and sub-file name. Mem. in Supp. of Def.'s Mot. for Summ. J. at 16-17. First, the FBI withheld the names of databases and database search results obtained from non-public databases that are used for official law enforcement purposes. Hardy Decl., ¶ 53. The FBI argues that these databases are "repositories for counterterrorism and investigative data" that allow law enforcement "to query information and develop investigative leads." *Id.* As a result, their disclosure might impede the FBI's effectiveness. *Id.* Pursuant to this first category, the FBI withheld information on records labeled DIMONTENEGRO 46-47, 50, 52-54, 58, and 60. *Id.* Because the disclosure of these databases and their search results could potentially lead to

circumvention of the law, this withholding was proper under Exemption 7(E).

Second, the FBI withheld information about its internal investigative methodologies. Hardy Decl., ¶ 54. The FBI contends that to disclose such information would allow individuals to alter their behavior to avoid detection. *Id.* To prevent this, the FBI withheld information on one record labeled DIMONTENEGRO 57. *Id.* at n.20. Given that the FBI has demonstrated that the release of such information might allow individuals committing financial crimes to adjust their conduct to avoid possible punishment, this withholding was also proper under Exemption 7(E).

Third, the FBI protected information pertaining to the names, numbers, and/or alpha designators of certain FBI squads and units. Hardy Decl., ¶ 55. The FBI maintains that the existence of these particular squads and units is not known to the general public and could reveal the area of focus the FBI has chosen to apply to certain aspects of its counterterrorism initiatives. *Id.* The FBI withheld this information on records labeled DIMONTENEGRO 52-54. *Id.* at n.21. Because of the sensitive nature of this information, the Court finds that this withholding was proper pursuant to Exemption 7(E).

Finally, the FBI withheld information pertaining to the case file number and sub-file name of a particular file

included in the responsive records.  Hardy Decl., ¶ 56.  The FBI
argues that the numbering used for the case file and the naming
conventions used for the sub-file name could potentially reveal
the investigative priority the FBI gives to certain matters, as
well as the investigative techniques it uses.  *Id.*  The FBI
withheld this information on records labeled DIMONTENEGRO 52-54
and 57.  *Id.* at n.22.  Again, given that this information is
connected to the possibility of criminals circumventing the law,
this withholding was proper pursuant to Exemption 7(E).

The final FOIA Exemption—Exemption 7(F)—protects from
disclosure information contained in law enforcement records that
"could reasonably be expected to endanger the life or physical
safety of any individual."  5 U.S.C. § 552(b)(7)(F).  Its reach
is expansive.  *Elec. Privacy Info. Ctr. v. DHS*, 777 F.3d 518,
526 (D.C. Cir. 2015).  Moreover, "[d]siclosure need not
*definitely* endanger life or physical safety; a reasonable
expectation of endangerment suffices."  *Id*.

Here, the FBI withheld portions of records labeled
DIMONTENEGRO 55-62 because they contain witness names and
information regarding criminal activities undertaken by
individuals who have shown a propensity for violence.  Hardy
Decl., ¶ 58 at n.23.  The FBI argues that in some cases, the
information is so specific that it would allow others to
determine the identities of the individuals who provided the

information and could result in those individuals being targeted for retaliation.  *Id.*  Given this possible danger, the FBI has established that there is a reasonable threat to life or physical safety.  Thus, its withholdings under Exemption 7(F) were proper.

    *3.    PA Exemptions (j)(2) and (k)(2)*

       The remaining withholdings claimed by the FBI and ICE fall under PA Exemptions (j)(2) and (k)(2).  The Court will address each of these exemptions in turn.

       Exemption (j)(2) exempts from disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals."  5 U.S.C. § 552a(j)(2).  In the instant case, the FBI's standard response to Plaintiff's FOIA/PA request, known as a *Glomar* response, stated that the agency "neither confirms nor denies the existence of [Plaintiff's] name on any watch lists."  Hardy Decl., Exh. F at 1.  The plain language of Exemption (j)(2) applies to prevent the disclosure of any information regarding FBI watch lists, as such lists are clearly intended to help law enforcement prevent crime and apprehend criminals.  While no Circuit Court of Appeals have previously addressed a *Glomar* response in the specific context of PA Exemption (j)(2), the

Court nevertheless finds that the FBI would be well within its authority to provide this sort of generic statement to Plaintiff. Accordingly, the FBI's response in this case was proper under Exemption (j)(2).

Exemption (k)(2) exempts from disclosure any system of records that consists of "investigatory material compiled for law enforcement purposes" other than material within the (j)(2) exemption. *Barnard v. DHS*, 598 F. Supp. 2d 1, 23-24 (D.D.C. 2009). ICE withheld a page labeled DIMONTENEGRO 60 to protect personal privacy data contained in the Alien File, Index, and National File Tracking System of Records. Pineiro Decl., ¶ 9. This type of information is specifically exempted from disclosure, pursuant to Department of Homeland Security regulations. *See Privacy Act of 1974; Department of Homeland Security U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement, U.S. Customs and Border Protection—001 Alien File, Index, and National File Tracking System of Records*, 78 Fed. Reg. 69,864-01 (Nov. 21, 2013). Accordingly, ICE's withholding of information under Exemption (k)(2) was proper.

*     *     *

Based upon a review of the uncontested facts, and after resolving all rational inferences in favor of Plaintiff as the non-moving party, the Court finds that no genuine issue of

22

material fact remains with regards to the FBI's compliance with FOIA and PA.  The FBI is therefore entitled to judgment as a matter of law.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment.  An appropriate order will issue.


|  | /s/ |
|---|---|
| June 22, 2017 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |